# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>    Petitioner,<br><br>    v.<br><br>Educational Credit Management Corporation,<br><br>    Respondent. | Case Number: 0:21-mc-00019<br><br>**PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS AND SUPPORTING MEMORANDUM** |

  Petitioner, the Consumer Financial Protection Bureau (Bureau), seeks an order from this Court directing Respondent, Educational Credit Management Corporation (ECMC), to show cause why it should not be required to fully comply with the Bureau's civil investigative demands (CIDs). The Bureau is an independent federal agency charged with regulating the offering and provision of consumer-financial products and services.[1] To fulfill this purpose, the Bureau may issue a CID to any entity that it has reason to believe may have information or documents relevant to a violation of federal consumer-financial law.[2] A Bureau

---

[1] 12 U.S.C. § 5491(a).
[2] 12 U.S.C. § 5562(c)(1).

1

CID may, among other things, require the recipient to produce documents, answer interrogatories, and provide written reports.[3]

Exercising this statutory authority, the Bureau issued two CIDs to ECMC in September 2020. ECMC is a guaranty agency that collects its own portfolio of defaulted student loans and also services defaulted student loans held by other guaranty agencies. The Bureau's CIDs relate to an investigation into whether guaranty agencies, servicers, and debt collectors have engaged in a scheme to cause student-loan borrowers to incur collection costs in a manner that violates the Consumer Financial Protection Act of 2010 (CFPA)[4] or the Fair Debt Collection Practices Act (FDCPA).[5]

The Bureau files this petition because ECMC has failed to produce all documents—in particular, emails—responsive to the Bureau's CIDs. Based on document productions from companies doing business with ECMC, the Bureau has so far identified 70 external ECMC emails that were responsive to the Bureau's CIDs, but which ECMC failed to produce. It is likely that ECMC has withheld many more external emails as well as internal emails and other company documents responsive to the Bureau's CIDs.

---

[3] *Id.*
[4] 12 U.S.C. §§ 5531, 5536.
[5] 15 U.S.C. §§ 1692e, 1692f.

## Jurisdiction and Venue

The Bureau may issue CIDs and enforce them in district court.[6] When an entity refuses to comply with a CID, the CFPA authorizes the Bureau to petition the district court in "any judicial district in which [that entity] resides, is found, or transacts business" for an order to enforce the CID.[7] ECMC is a nonprofit corporation registered with the Minnesota Secretary of State. Its headquarters is in Minneapolis, and it does business within this district.

## Factual and Procedural Background

### I. The Bureau's Investigation

The Bureau's investigation centers on industry practices impacting whether defaulted student borrowers incur collection costs. Borrowers who default on student loans may be subject to collection costs that can exceed 20% of the loan balance.[8] But these borrowers can avoid collection costs if they enter into a loan-rehabilitation or other repayment agreement within 60 days of default. (Industry participants typically add 5 days—for a total of 65 days—to this grace period to allow time for borrowers to receive the default notice by mail. Hereinafter, this period will be referred to as "65 days.") The Bureau's investigation seeks to

---

[6] 12 U.S.C. § 5562(c)(1), (e)(1).
[7] 12 U.S.C. § 5562(e)(1).
[8] *See* 20 U.S.C. § 1091a(b); 34 C.F.R. § 682.410(b)(2).

determine whether guaranty agencies, servicers, and debt collectors have employed practices to forestall borrowers' loan rehabilitations or other repayment agreements until *after* the 65-day period following default so that these industry participants could add collection costs to the borrowers' accounts.

ECMC is a guaranty agency,[9] first-party debt collector, and servicer. ECMC is the designated guaranty agency for eight states. ECMC's portfolio comprises student loans from those states. Following default, ECMC performs in-house collections on that portfolio—with the exception of loans from one state, which ECMC immediately places for collections with an external collection agency. ECMC is also a third-party servicer and guarantor processor for seven other guaranty agencies (also called "guarantors"). As a servicer, ECMC places defaulted student loans from those seven guarantors with a network of about

---

[9] The Seventh Circuit has explained the role of guaranty agencies relating to defaulted student loans. Private student loans in the Federal Family Education Loan Program (FFELP) "are guaranteed by guaranty agencies and reinsured by the federal government. *See* 20 U.S.C. § 1078(a)-(c)." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015). "When a borrower defaults on a loan and the lender is unable to recover the amount despite due diligence, the lender notifies the guaranty agency of the default and the guaranty agency purchases the loan from the lender. Once the lender has transferred the debt to the guaranty agency, that agency may recover its losses from the Department of Education. *See* 20 U.S.C. § 1078(c)(1)(A), (E); 34 C.F.R. § 682.406(a). The guaranty agency must then take numerous steps to collect the defaulted student loan." *Id*. at 640–41.

twelve private collection agencies.[10] ECMC's internal collections of its own portfolio and its position servicing and managing defaulted student-loan accounts across a network of guaranty agencies and private collection agencies place ECMC at the center of the industry practices under investigation.

II.     The Bureau's Civil Investigative Demands to ECMC

On September 9, 2020 and September 30, 2020, the Bureau issued CIDs to ECMC seeking responses to interrogatories, written reports, and production of documents.[11] ECMC's outside counsel acknowledged receipt of both CIDs on behalf of ECMC.[12] The Bureau met and conferred with ECMC's counsel regarding both CIDs. On October 5, 2020, the Bureau sent ECMC's counsel a letter modifying the September 9, 2020 CID, and on October 16, 2020, the Bureau sent ECMC's counsel a letter modifying the September 30, 2020 CID.[13]

ECMC did not request modifications to any document requests in either CID—other than to request extensions of the compliance deadlines, which the Bureau granted.[14] The September 9, 2020 CID, as modified, required ECMC to complete document production by October 23, 2020, and the September 30, 2020

---

[10] Declaration of Maxwell Peltz, filed herewith, ("Peltz Decl.") at ¶ 9.
[11] *Id*. at ¶ 4.
[12] *Id*.
[13] *Id*. at ¶ 6.
[14] *Id*. at ¶ 7.

CID, as modified, required ECMC to complete document production by November 13, 2020.[15]

On February 12, 2021, Bureau counsel and ECMC counsel had a telephonic conference regarding ECMC's anticipated final document production in response to the Bureau's CIDs. During that call, Bureau counsel stated that he wanted to confirm that ECMC would be making a complete production of emails responsive to the CIDs. ECMC counsel responded that with ECMC's anticipated document production by the end of the following week, ECMC will have made a comprehensive and materially complete email production.[16] On February 19, 2021, ECMC made what it stated was its final document production in response to both CIDs (other than individual documents it said it would produce if it found additional responsive documents).[17]

Both CIDs requested company documents, including emails, relating to so-called pre-65 accounts—that is, recently defaulted student-loan accounts still within the 65-day period before collection costs are assessed. The CIDs requested the following documents, among others, relating to pre-65 accounts: ECMC's communications with its guarantor clients and the private collection agencies with

---

[15] *Id*.
[16] *Id*. at ¶ 8.
[17] *Id*.

which ECMC places accounts; ECMC's internal communications, including in relation to its in-house collections; and ECMC's communications relating to limitations placed on commissions paid to private collection agencies for loan rehabilitations or consolidations within 65 days of default (that is, without collection costs added). The CID requests calling for email productions covered the period since January 1, 2015.[18]

### III. ECMC's Failure to Fully Comply with the CIDs

Based on documents produced by entities doing business with ECMC, the Bureau has so far identified 70 external ECMC emails that ECMC did not produce even though they were responsive to the CIDs.[19] But these 70 ECMC emails undoubtedly represent only a fraction of the documents that ECMC improperly withheld. First, some of the entities that produced these 70 emails have not yet completed all document productions[20] (and some may not have produced all responsive emails themselves). Second, the 70 emails came in response to CIDs to only a subset of the broad network of guaranty agencies and private collection

---

[18] *See* Exhibits A and B attached to Peltz Decl. The CIDs reached back to 2015 because in the middle of that year, the Department of Education issued a Dear Colleague Letter relating to the assessment of collection costs that impacted industry practices involving defaulted student loans. *See* U.S. Dep't of Educ., Off. of Postsecondary Educ., Dear Colleague Letter (DCL), GEN-15-14 (July 10, 2015).
[19] *Id*. at ¶ 10.
[20] *Id*.

7

agencies with which ECMC does business.[21] Third, the 70 emails were only external emails; ECMC likely withheld a substantial number of its internal emails responsive to the CIDs—emails that the Bureau cannot obtain from external sources. Fourth, ECMC's withholding of responsive documents probably extends to other types of internal company documents relating to the subject matter of the Bureau's investigation.

ECMC cannot explain its production shortfalls by claiming that it was not aware of or did not engage in the practices under investigation. ECMC emails reveal that it closely tracked the issue of pre-65 accounts. One external email—obtained by the Bureau from one of ECMC's guarantor clients, but withheld by ECMC—shows that ECMC had discussions about how criteria used to evaluate collection agencies' performance could result in those agencies delaying all collection activities of newly defaulted (i.e., pre-65) loans until after collection costs are assessed, essentially ensuring that every loan that defaults accrues collection costs (unless the borrower calls in to the collection agency before the 65th day).[22] Emails show that ECMC and its guarantor clients monitored trends in the number of accounts with and without collection costs and discussed what

---

[21] *Id.*
[22] *Id.* at ¶ 11.

incentives and practices might impact collection-cost revenues.[23] In an email obtained by the Bureau from a private collection agency (but withheld by ECMC), an ECMC manager contacted the private collection agency after ECMC noticed that borrowers were entering into rehabilitations without collection costs at a higher rate compared to accounts placed with other private collection agencies.[24]

Emails and contracts also show how ECMC may have created incentive structures that resulted in the delaying of borrower rehabilitations and consolidations past the 65th day. ECMC only paid commissions to private collection agencies for loan rehabilitations or consolidations with added collection costs—no collection costs, no commissions.[25] In another email that ECMC withheld, a private collection agency asked ECMC to revisit that compensation policy.[26] And in yet another string of emails that ECMC withheld, a private collection agency discussed with ECMC the procedures for placing recently

---

[23] *Id*.
[24] *Id*.
[25] *Id*. at ¶ 12. The only exception was that one of the seven guarantors whose loans ECMC serviced insisted that instead of zero, a reduced flat commission be paid to private collection agencies if there was a rehabilitation or other repayment arrangement that did not include collection costs. *Id*.
[26] *Id*.

defaulted accounts received from ECMC into a "holding queue" until the 65th day and assessment of collection costs.[27]

ECMC acknowledged in its interrogatory responses that it treats accounts in its own portfolio similarly. It does not actively collect defaulted student loans until *after* the 65 days has passed and collection costs have been added.[28] (ECMC maintains that if a borrower calls in within the 65-day period, it treats the account the same as other accounts.[29]) And ECMC withholds certain commissions to its collections agents for account resolutions without added collection costs—that is, collections agents do not receive certain commissions if they assist a borrower to enter into a loan rehabilitation or consolidation before the 65th day and thereby help the borrower avoid collection costs.[30]

## Argument

### I. The Bureau has met its burden for enforcement of the CIDs.

A federal agency seeking to enforce an investigative demand must satisfy a four-part test. As the Eighth Circuit has explained, "a subpoena is properly enforced if (1) issued pursuant to lawful authority, (2) for a lawful

---

[27] *Id*. at ¶ 13.
[28] *Id*. at ¶ 14.
[29] *Id*.
[30] *Id*.

purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable."³¹ The Bureau's CIDs pass this test.

### A. The CIDs seek information within the scope of the Bureau's lawful investigative authority.

The Bureau issued the CIDs to ECMC under its lawful investigative authority. Under the CFPA, the Bureau may issue a CID to "any person" that it "has reason to believe . . . may be in possession, custody, or control of any documentary material . . . or may have any information relevant to a violation" of consumer-financial-protection laws.³² The Eight Circuit has explained that "[t]he Government, with its subpoena power, 'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'"³³

The Bureau has reason to believe that ECMC may have documents and

---

³¹ *United States v. Whispering Oaks Res. Care Fac., LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (review of district court order enforcing U.S. Attorney's administrative subpoena duces tecum).
³² 12 U.S.C. § 5562(c)(1).
³³ *Whispering Oaks*, 673 F.3d at 818 (citing *United States v. Morton Salt Co.,* 338 U.S. 632, 642–43 (1950)).

11

information relevant to violations of the CFPA and FDCPA.[34] As described above, industry participants may be engaged in practices designed to forestall borrowers' entry into rehabilitation or other repayment agreements until after the 65-day grace period expires and collection costs are assessed. Such practices could constitute unfair, deceptive, or abusive acts or practices prohibited by the CFPA,[35] as well as unfair, unconscionable, false, deceptive, or misleading representations or means to collect or attempt to collect a debt, as proscribed by the FDCPA.[36]

Information and documents in ECMC's possession, custody, or control relating to ECMC's servicing and collections activities—as well as those of its guarantor clients and the private collection agencies with which ECMC has placed defaulted loans—would be relevant to such CFPA and FDCPA violations. The Bureau's CIDs thus seek information and documents directly relevant to the violations it is investigating; they are well within the scope of the Bureau's investigative authority.

The Bureau's authority to issue CIDs is broader than its enforcement

---

[34] The CFPA and FDCPA are "Federal consumer financial laws" under the CFPA. *See* 12 U.S.C. § 5481(14) (defining "Federal consumer financial law" to include "the provisions of this title" and "the enumerated consumer laws"); 12 U.S.C. § 5481(12)(H) (listing the Fair Debt Collection Practices Act among the "enumerated consumer laws").
[35] *See* 12 U.S.C. §§ 5531, 5531.
[36] *See* 15 U.S.C. §§ 1692f; 1692e.

authority. But ECMC plainly falls within the Bureau's enforcement authority, as well. The Bureau may bring an enforcement action against a "covered person."[37] A "covered person" is "any person that engages in offering a consumer financial product or service."[38] A "financial product or service" includes "acquiring, purchasing, selling, brokering, or other extensions of credit,"[39] "servicing loans,"[40] and "collecting debt."[41] ECMC acquires defaulted loans, services the defaulted loans of its guarantor clients, and collects defaulted loans in its own portfolio. It is therefore plainly a "covered person" within the Bureau's enforcement (as well as its investigative) authority.

### B. The Bureau issued the CIDs for a lawful purpose.

The Bureau issued the two CIDs to ECMC for the purpose of investigating potential violations of federal consumer-financial laws by guaranty agencies, servicers, and debt collectors in connection with defaulted student loans. This is plainly a lawful purpose. "The respondent bears a heavy burden to disprove the

---

[37] 12 U.S.C. § 5531(a). The CFPA also authorizes the Bureau to bring enforcement actions against "service providers," *see id.*, and those who "knowingly or recklessly provide substantial assistance to a covered person or service provider in violation of" the CFPA. *See* 12 U.S.C. § 5536(a)(3).
[38] 12 U.S.C. § 5481(6).
[39] 12 U.S.C. § 5481(15)(A)(i).
[40] *Id.*
[41] 12 U.S.C. § 5481(15)(A)(x).

13

existence of a valid purpose for an administrative subpoena."[42] ECMC cannot meet that burden here.

    **C.    The CIDs request information relevant to their lawful purpose.**

The CIDs request documents that are "reasonably relevant to the [Bureau's] investigation."[43] The Eighth Circuit has noted that "relevance" in the context of enforcing federal-agency investigative demands "is not a question of evidentiary relevance," and the standard for determining a request's relevance "is not particularly burdensome."[44] "[I]ndeed, a subpoena should be enforced when the evidence sought by the subpoena is not plainly incompetent or irrelevant to any lawful purpose of the agency in the discharge of its duties."[45] Here, the CIDs seek information and documents directly related to the Bureau's investigation of industry practices involving pre-65 accounts. The CIDs are therefore relevant to the investigation's lawful purpose.

    **D.    The information and documents sought are not unreasonable.**

The CIDs' requests are tailored and directed to the practice that is the center

---

[42] *Whispering Oaks*, 673 F.3d at 817 (citing *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 316 (1978)).
[43] *Id*. at 818 (citing *Morton Salt,* 338 U.S. at 652).
[44] *Id*.
[45] *Id. See also United States v. Arthur Young & Co.,* 465 U.S. 805, 814 (1984) (noting that federal agency "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense," and that "even *potential* relevance to an ongoing investigation, without reference to its admissibility," is sufficient.).

of the Bureau's investigation, as described above. They are not unreasonably broad or burdensome. Indeed, ECMC never requested any modification to the document requests—other than additional time to comply, which the Bureau granted.[46] Accordingly, the information and documents sought by the CIDs are not unreasonable.

## II.   The Court should order ECMC to show cause why it need not fully comply with the Bureau's CIDs.

As the Eight Circuit explained, "[i]f an agency has satisfied these requirements for an administrative subpoena, the burden shifts to the respondent to show that judicial enforcement would amount to an abuse of the court's process."[47] Unless ECMC can make this showing, the Court may order ECMC to show cause why it should not be required to fully comply with the CIDs and why the Bureau's petition to enforce should not be granted.[48] The circumstances here support the granting of such an order.

### Demand for Relief

The Bureau respectfully asks that this Court:

1.   order ECMC to show cause in writing why it should not be required to fully

---

[46] Peltz Decl. at ¶ 7.
[47] *Whispering Oaks*, 673 F.3d at 817.
[48] *See, e.g., EEOC v. Schwan's Home Serv.*, 707 F.Supp.2d 980, 998 (D. Minn. 2010).

15

comply with the Bureau's September 9, 2020 CID, as modified by the Bureau's letter of October 5, 2020, and the Bureau's September 30, 2020 CID, as modified by the Bureau's letter of October 16, 2020;

2. after ECMC's response to the order to show cause, order ECMC to fully comply with the CIDs by producing all responsive documents no more than 14 days after entry of the order;

3. award the Bureau the costs it incurred in maintaining this action; and

4. grant such other relief as this Court deems just and proper.

Dated: March 4, 2021                Respectfully submitted,

Cara Petersen
*Acting Enforcement Director*
Jeffrey Paul Ehrlich
*Deputy Enforcement Director*
Owen Martikan
*Assistant Litigation Deputy*

/s/ Maxwell Peltz
Maxwell Peltz (CA Bar No. 183662)
(Appearing per LR 83.5(a))
Telephone: (202) 306-1039
E-mail: maxwell.peltz@cfpb.gov
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Facsimile: (703) 642-4585

*Attorneys for Petitioner Consumer Financial Protection Bureau*