# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>                              Petitioner,<br><br>  v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>                              Respondent. | Case No. 21-mc-19 (SRN/DTS) |

## EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE AND OPPOSITION TO THE CFPB'S PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS

Allyson B. Baker (*pro hac vice forthcoming*)
Erin Zacuto Cass (*pro hac vice forthcoming*)
Sameer P. Sheikh (*pro hac vice forthcoming*)
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Phone:  (202) 344-4000
abbaker@venable.com

Aaron Mills Scott (Atty# 033943X)
FOX ROTHSCHILD LLP
222 S 9th Street
Minneapolis, MN 55402
Phone: (612) 607-7000
ascott@foxrothschild.com

*Counsel for Respondent ECMC*

## TABLE OF CONTENTS

I.      PREAMBLE AND SUMMARY OF ARGUMENT ................................................ 1

II.     BACKGROUND ........................................................................................... 4

        A.      ECMC ................................................................................................ 4

        B.      The Bureau's Investigation ............................................................... 6

        C.      ECMC Worked Diligently To Locate And Produce Documents
                Responsive To The CIDs, Intending To Fully Comply With Them ............ 7

        D.      The Bureau Filed Its March 4 Petition to Enforce, Even As
                ECMC Continued To Make Rolling Productions In Compliance
                With The CIDs .................................................................................... 9

        E.      The Bureau Issued A Post-Petition CID That For the First Time
                Requested Information That Should Have Been Sought Before
                The Bureau Filed Its Petition ............................................................. 9

        F.      The Bureau Consistently Rejected ECMC's Ongoing Efforts
                To Continue Discussions During The Spring and Early Summer ............. 10

III.    ARGUMENT ............................................................................................... 10

        A.      Contrary To The Bureau's Assertions, Courts Have Broad Discretion
                To Deny Improper Petitions To Enforce .............................................. 10

        B.      The Petition Has No Legal Or Factual Basis And Relies On Nothing
                More Than Bare Representations ....................................................... 12

        C.      Bureau Failed to Comply With Its Meet-and-Confer Obligations. ............. 13

        D.      The Bureau Improperly Disclosed A Non-Public Investigation For
                No Legitimate Reason And In Contravention Of Its Own Rules ............... 15

        E.      The Petition Improperly And Unfairly Implies That ECMC Has
                Violated Laws, Even Though The Bureau Admits That Its
                Investigation Is Ongoing ................................................................... 17

IV.     CONCLUSION ............................................................................................ 18

i

Respondent Educational Credit Management Corporation ("ECMC") hereby submits its Response to the Court's June 16, 2021 Order to Show Cause (the "June 16 Order") (Dkt. No. 5) as to why an order compelling compliance with CIDs issued by the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") should not be granted. This submission also serves as ECMC's Opposition to the CFPB's Petition to Enforce Civil Investigative Demands ("CIDs") (the "Petition", "Petition to Enforce", or "Pet.") (Dkt. No. 1).[1]

## I.     PREAMBLE AND SUMMARY OF ARGUMENT

Despite the Bureau's Petition asking this Court to "enforce" its CIDs, there can be no dispute that ECMC has responded – through multiple document productions, responses to interrogatories, and written reports – to the Bureau's CIDs.  Yet, the Bureau filed its factually and legally unsupportable Petition without meeting and conferring to discuss the alleged deficiencies in ECMC's responses to the CIDs, and the Bureau did so with the full understanding that the filing of its Petition would reveal the identity of a subject of a non-

---

[1] The June 16 Order to Show Cause, which adopts the language of the Bureau's Proposed Order, states that "any uncontested allegation in the Petition [will] be considered admitted." Para. 6 of the June 16 Order.  For the avoidance of doubt, ECMC denies or rejects each of the Petition's allegations or mischaracterizations regarding ECMC's purported noncompliance with or withholding of documents responsive to the CIDs at issue in the Bureau's Petition. Further, ECMC denies each of the Bureau's allegations or mischaracterizations regarding any purported impropriety of conduct by ECMC in connection with its role as a guaranty agency. *See, e.g.,* pgs. 3-5 and 8-10 of the Petition to Enforce. Notwithstanding, in the interests of brevity, ECMC will not address in detail the latter issues (at least at this juncture), which are irrelevant to the Court's adjudication of the Order to Show Cause and Petition to Enforce.

1

public investigation that, by the Bureau's own admission, continues to be in progress, in violation of its own rules.

ECMC is a designated non-profit guaranty agency pursuant to an agreement with the Secretary the U.S. Department of Education ("ED") under 20 U.S.C. § 1078(b). Guaranty agencies are either state agencies or private non-profit corporations that assist ED with the administration and implementation of the Federal Family Education Loan ("FFEL") Program, a federally insured student loan program that is ultimately reinsured by federal taxpayers via ED.  20 U.S.C. §1071, *et seq.*

The FFEL program was initiated by the Higher Education Act of 1965 ("HEA") and implemented through regulations promulgated by ED.  20 U.S.C. § 1082.  ECMC functions as a fiduciary for the federal government in its role as a student loan guarantor, subject to the specific ED regulations that define its tasks and responsibilities as a guaranty agency. *See* 34 C.F.R. § 682.400, *et seq*.  The CFPB does not have Congressional authority to administer or implement the HEA, even though its investigation appears to exclusively concern how ECMC has performed its guaranty agency responsibilities under ED regulations.  Pet. at 3-5, 8-10.

Nevertheless, ECMC has cooperated with the CFPB's investigation, complied with its CIDs, and never expressed any contrary intent.  Prior to the Bureau's filing, ECMC had already produced approximately 1,000,000 lines of Bureau-requested data and thousands of pages of materials, including emails, in addition to responses to the Bureau's interrogatories.  The Bureau's contention that ECMC "improperly withheld" responsive documents is incorrect and unsubstantiated.  The Petition also attempts to argue that ECMC

2

"failed" to respond to the CIDs by implying – inaccurately – that a February 19 ECMC email stated that its document production made on that day was the "final" one. The February 19 email, which tellingly is omitted from the Petition, makes no such statement. Moreover, even if the email stated that ECMC's production was "final," such an assertion would still not substantiate the Bureau's claim that ECMC "improperly withheld" responsive emails.

The Bureau, in turn, has filed a Petition rife with unsubstantiated and incendiary claims and which is not properly before this Court. The CFPB failed to meet and confer with ECMC prior to filing the Petition. A discussion between the Bureau and ECMC about fundamental topics may have helped to explain why ECMC was unable to produce seventy emails that other subpoenaed parties apparently produced. Moreover, the Bureau relies on the purportedly "withheld" seventy emails as the basis for its Petition, and its incendiary allegations about non-compliance, even as the CFPB has refused ECMC's request to provide copies of these emails, or even a high-level log that describes them generally.

The Bureau unnecessarily disclosed the fact of this non-public investigation and included baseless and harmful claims about ECMC in its Petition. Moreover, it did so in violation of the Bureau Rules that prohibit such disclosures. Pursuant to the Consumer Financial Protection Act ("CFPA") and its implementing regulations, the Bureau is permitted to bring a petition to enforce only when the recipient of a CID *fails* or *refuses* to comply with a CID – neither of which has occurred here. *See* 12 U.S.C. § 5562 (e); 12 C.F.R. § 1080.10. And, in disclosing the investigation unnecessarily, the Bureau further violated its own rules regarding the confidential and non-public nature of ongoing

investigations.  *See* 12 C.F.R. § 1080.14(b) ("Bureau investigations are generally non-public.  Bureau investigators may disclose the existence of an investigation to potential witnesses or third parties to the extent necessary to advance the investigation.").  The Petition is unfair, damaging, and highly prejudicial to ECMC.

The Court should deny the Order to Show Cause and refuse to enforce the Petition, finding that it would be an abuse of process to do so.  ECMC respectfully requests that the Court consider ordering such further relief as it deems just, including any discretion to award fees and costs, given the substantial costs to ECMC to defend this action, and the Bureau's improper disclosure of this previously non-public investigation.

## II.   **<u>BACKGROUND</u>**

### A.   **ECMC**

ECMC is a nonprofit corporation that provides support for the administration of the FFEL Program as a student loan guaranty agency.  *Who we are*, EDUC. CREDIT MGMT. CORP. https://www.ecmcgroup.org/who-we-are (last accessed July 23, 2021).  ECMC has been designated by ED to serve as the guarantor for eight states and serves as the outsourced guarantor processor for six other state and non-profit guaranty agencies.  *Id.*; *Third-party guarantor servicing*, EDUC. CREDIT MGMT. CORP., https://www.ecmc.org/ guarantors/third-party-guarantor-servicing.html (last accessed July 23, 2021).

ED's regulations promulgating the HEA prescribe ECMC's responsibilities and obligations as a guaranty agency.  Among other things, ECMC protects the interest of taxpayers who fund the federal student loan program by providing financial literacy education and college access services, engaging in default prevention efforts with

delinquent borrowers, and insuring lender claims when a borrower defaults, dies, becomes disabled, or files for bankruptcy.  Guaranty agencies then work as a fiduciary to federal taxpayers, who ultimately re-insure the loans, to resolve borrower defaults, including collecting on defaulted loans and returning funds to the federal taxpayers.  *See* 34 C.F.R. §§ 682.102(g), 682.404(a)(2)(ii), 682.406; *see also* 34 C.F.R. § 682.419(a) ("The guaranty agency must exercise the level of care required of a fiduciary charged with the duty of protecting, investing, and administering the money of others"); *see also Pelfrey v. Educ. Credit Mgmt. Corp.*, 208 F.3d 945 (11th Cir. 2000); *Bennett v. Premiere Credit of N. Am., LLC*, 504 Fed. Appx. 872, 878 n.4 (11th Cir. 2013) (holding that the Fair Debt Collection Practices Act does not apply to a guaranty agency because "(1) it has a fiduciary relationship with the [Department] and (2) its collection activities are incidental to that fiduciary obligation").

The timeline of a student loan starts with active repayment and, in cases where a borrower goes more than 60 days without making a payment, the loan then moves into delinquency.  If the delinquency persists for more than 270 days, the borrower defaults, which occurs when a guaranty agency pays a default claim to the lender and begins efforts to resolve the default and collect on the loan.  *See* 34 C.F.R. §§ 682.200, 682.406; 20 U.S.C. § 1085(l).  Prior to default, as part of its obligations under the HEA, ECMC and other FFEL Program guarantors engage in substantial default aversion assistance with delinquent borrowers to help them avoid default.  *See* 34 C.F.R. §§ 682.401(b)(1)(iv), 682.401(d), 682.401(e), 682.404(a)(2).  ECMC's efforts in this regard include actively educating and assisting borrowers to resolve their delinquency.  *See Default prevention*, EDUC. CREDIT

MGMT. CORP., https://www.ecmc.org/lenders/default-prevention.html (last accessed July 23, 2021).

After a lender has met all due diligence requirements prescribed by ED regulations and the guarantor has paid the lender's default claim, federal regulations script an extensive set of requirements governing how guaranty agencies must administer defaulted loans. *See* 34 C.F.R. § 682.410. Within the first 45 days of the guaranty agency's payment of a default claim to a lender and before any collection costs are assessed, a guaranty agency must send borrowers a notice of default (NOD) that explains the consequences of default, and advises borrowers of their rights with regard to the defaulted loan, including options available to remove the loan from default. *See* 34 C.F.R. § 682.410(b)(5). After they receive the NOD and in accordance with ED regulations, borrowers have a 60-day due process period to inspect and copy relevant records, request an administrative review of the legal enforceability or defaulted status of the loan, or enter into a repayment agreement. *See* 34 C.F.R. § 682.410(b)(5)(vi)(G)–(H); *see also* 34 C.F.R. § 682.410(b)(5)(ii)(B)–(D).

After the first 60 days following the NOD, ECMC engages in required collection efforts to collect the loan on behalf of ED, in accordance with regulations. *See* 20 U.S.C. § 1078(c)(2)(A); 34 C.F.R. § 682.410(b)(6). Guarantors are regularly audited by ED to ensure compliance with all regulations. *See* 34 C.F.R. § 682.410(b).

### B.    The Bureau's Investigation

In September 2020, the Bureau issued two CIDs to ECMC (the "September CIDs") pursuant to 12 C.F.R. § 1080.6 and § 1052(c) of the Dodd-Frank Act, 12 U.S.C. § 5562. *See* Petition to Enforce (Dkt. No. 1), at p.5. Among other items, the CIDs request

information relating to the collection of defaulted FFEL loans and the nature of borrower communications relating to those defaulted loans.  *See id.*  Nearly all the requests seek information relating to a novel term coined by the Bureau: "Pre-65", which is defined in the CIDs as:

> within the 65-day period after the guarantor's date of default – including within the 60-day period after the guaranty agency sends the Initial Default Notice –and includes the variations "pre 65," "pre65," "pre-60," "pre 60," and "pre60."

*Id.*  Neither "Pre-65," nor any of the variations included in the CIDs' definition, is a term utilized by ECMC, nor in the guaranty agency industry generally.

Over the course of multiple meetings with Enforcement Counsel in the fall of 2020, the parties discussed the production of information and materials and acknowledged that ECMC would utilize a protocol involving search terms to collect potentially responsive emails.  *See* Declaration of Erin Zacuto Cass ("Cass Decl.") ¶ 3.

### C. ECMC Worked Diligently To Locate And Produce Documents Responsive To The CIDs, Intending To Fully Comply With Them

ECMC has worked diligently to respond to the CIDs, including by retrieving and producing responsive emails.  *See* Declaration of Joe Marko ("Marko Decl."), ECMC's Senior System Administrator.  ECMC produced a substantial amount of information to the Bureau.  Beginning on October 16, 2020, ECMC made rolling productions of documents and responses to interrogatories to the Bureau.  *See* Exhibits A – G to Cass Decl.  Prior to the filing of the Petition, ECMC had produced nearly 9,000 pages of documents and one million lines of Bureau-requested data.  *See id.*, Exhibits A – F.

On February 19, ECMC made an additional production in response to the CIDs and the accompanying email stated, in pertinent part that ECMC had:

> uploaded documents bearing Bates numbers ECMC002207-8948 to the CFPB Extranet (matter [REDACTED]). The password to access the documents is [REDACTED]. We [ECMC] will send you supplemental objections and responses early next week; in the meantime, ECMC incorporates all previously asserted objections.

*See* Exhibit F to Cass Decl. (Feb. 19, 2021 email). As the email demonstrates, ECMC did not represent that this would be ECMC's final production of documents in response to the CIDs, contrary to the Bureau's representation in the Petition and supporting declaration. *Compare* Declaration of Maxwell Peltz (Dkt. No. 2), ¶ 8 ("On February 19, 2021, ECMC made what it stated was its final document production in response to both CIDs (other than individual documents its stated it would produce if it located additional responsive documents)")), *with* Exhibit F to Cass Decl. (Feb. 19, 2021 email).

Indeed, ECMC made a subsequent production four days later, on February 23, 2021. This production provided a data overlay and additional "fields" in response to the Bureau's request, and it also was accompanied by a transmittal email that stated, in pertinent part, that ECMC had:

> uploaded to the CFPB Extranet (matter [REDACTED]). . . . the fields that you've requested. . . . .
>
> If you have any additional questions, please let us know.
>
> Thank you.

*See* Exhibit H to Cass Decl. (Feb. 24, 2021 email chain).

**D.  The Bureau Filed Its March 4 Petition to Enforce, Even As ECMC Continued To Make Rolling Productions In Compliance With The CIDs**

Nine days later, on March 4, the Bureau filed its Petition to Enforce alleging, among other things, that ECMC "improperly withheld" responsive documents.  *See* Dkt. No. 1. The Bureau did not seek to meet and confer with ECMC prior to filing the Petition.  Cass Decl. ¶ 7.  And at no point in time, prior to the filing of the Petition to Enforce, did the Bureau communicate to ECMC that the Bureau believed that responsive documents had been "withheld" or that the Bureau had reason to believe that ECMC had inadvertently, let alone deliberately, failed to provide all responsive materials.

Enforcement Counsel apprised ECMC of the Petition's filing in a terse email sent late in the evening of March 4.  Exhibit I to Cass Decl. (March 4, 2021 email).  Immediately upon learning that the Bureau had filed the Petition, counsel for ECMC asked to speak with Enforcement Counsel in an effort to resolve any misunderstanding.  *See id*. At that time, ECMC was continuing to comply with the CIDs and, on March 5, 2021, ECMC produced additional documents to the Bureau.  Exhibit G to Cass Decl. (March 5, 2021 email). Enforcement Counsel declined to speak with ECMC until several days later.  Exhibit J to Cass Decl. (March 8, 2021 email).

**E.  The Bureau Issued A Post-Petition CID That For the First Time Requested Information That Should Have Been Sought Before the Bureau Filed Its Petition**

On March 9, 2021, counsel for ECMC spoke with the Bureau's Enforcement Counsel hoping to understand the basis of the Petition, since the Bureau had failed to meet and confer prior to its filing.  *See* Cass Decl. ¶ 7 and Exhibit K.  The Bureau still refused

to explain why it filed its Petition or to provide the seventy emails relied on in the Petition or a log with any descriptive information. *See id.*

On March 10, 2021, six days *after* it filed its Petition to Enforce, the Bureau issued a third CID to ECMC (the "Post-Petition CID"). *See* Exhibit L to Cass Decl. (March 10, 2021 CID). The Post-Petition CID requests information, for the first time, pertaining to ECMC's email retention protocols. *See id.* The Bureau, of course, should have sought this information prior to filing its Petition.

Since then, consistent with its prior interactions with the Bureau, ECMC has communicated its intent to continue working cooperatively with the Bureau and has endeavored to respond to any Bureau requests.

### F. The Bureau Consistently Rejected ECMC's Ongoing Efforts To Continue Discussions During The Spring and Early Summer

In the weeks preceding the June 16 Order, ECMC repeatedly reached out to the Bureau in an attempt to better understand, and resolve, whatever potential misunderstanding might have animated the decision to file the Petition. Cass Decl. ¶ 13. This effort was to no avail. Despite multiple requests from counsel, Enforcement Counsel refused to engage on the question of why the Petition had been filed or to withdraw the Petition. *See* Cass Decl. ¶ 13.

## III.   ARGUMENT

### A.   Contrary To The Bureau's Assertions, Courts Have Broad Discretion To Deny Improper Petitions To Enforce

In pursuing petitions to enforce CIDs, agencies cannot treat courts as a "rubber-stamp," because "the deference courts afford agencies does not 'eviscerate the independent

10

role which the federal courts play in subpoena enforcement proceedings.'" *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colls. & Schs.,* 854 F.3d 683, 689 (D.C. Cir. 2017) ("*ACICS*") (quoting *FEC v. Machinists Non-Partisan Political League*, 655 F.2d 380, 385–86 (D.C. Cir. 1981)).  Courts throughout the country review petitions to enforce CIDs in the same vein as applications to enforce administrative subpoenas. *See, e.g., ACICS,* 854 F.3d at 689.  An "application for order to show cause why a subpoena should not be enforced is a dispositive matter." *E.E.O.C. v. Schwan's Home Serv.*, 707 F. Supp. 2d 980, 990 (D. Minn. 2010), *aff'd*, 644 F.3d 742 (8th Cir. 2011).

Here, the Bureau "must demonstrate (1) that the subpoena is within the agency's authority; (2) that the agency has satisfied its own procedural requirements; and (3) that the information sought is relevant to its investigation." *E.E.O.C. v. U.P.S.*, Civil No. 06-MC-42 (MJD/SRN), 2006 WL 3712941, at *2 (D. Minn. Sept. 1, 2006) (discussing requirements in context of EEOC subpoena); *see also United States v. Lask,* 703 F.2d 293, 297 (8th Cir. 1983) (same, but in context of IRS subpoena).  But even when each of the requirements is met, courts must refuse to enforce subpoenas "where enforcement of the subpoena would amount to an abuse of the court's process." *Lask*, 703 F.2d at 297.  *See also Schwan's Home Serv.*, 707 F. Supp. 2d at 987.  For example, in *CFTC v. Collins*, the court reversed the district court's grant of an order enforcing subpoenas as an abuse of discretion.  997 F.2d 1230 (7th Cir. 1993).  In that case, Judge Posner, writing for the Seventh Circuit, found that the district court erred where: "[The Commission] asked for and obtained the enforcement of the subpoenas as a matter of rote, *upon its bare*

11

*representation that the tax returns might contain information germane to the investigation*." *See id.* at 1234 (emphasis added).

### B. The Petition Has No Legal Or Factual Basis And Relies On Nothing More Than Bare Representations

The Consumer Financial Protection Act, which is the CFPB's enabling act, and implementing regulations, provide that there are only two circumstances in which the Bureau is permitted to bring a Petition to Enforce: when a CID-recipient *fails* or *refuses* to comply with a CID. *See* 12 U.S.C. § 5562(e); 12 C.F.R. § 1080.10 ("the failure or refusal . . . to comply with, or to obey, a civil investigative demand"). ECMC has neither failed nor refused to comply with the CIDs.

The Petition makes baseless, incendiary claims such as ECMC "improperly withheld" responsive documents, Pet. at 7-10, and that it is "likely that ECMC has withheld many more external emails, as well as internal emails and other company documents responsive to the Bureau's CID." Pet. at 2. The Bureau argues through conjecture that because ECMC did not produce seventy (allegedly) responsive emails that other parties provided to the Bureau, ECMC must have possessed, and deliberately withheld, those emails and possibly other documents, and thus, failed to comply. Pet. at 7-8. ECMC does not know which seventy ECMC emails the Bureau references, and it has been unable to ascertain such information. *See* Exhibit K to Cass Decl. (March 11, 2021 email). The Bureau attempts to support all of these claims by attaching a declaration from Enforcement Counsel that has little, if any, evidentiary value. The declaration reiterates the same

unsubstantiated statements as the Bureau's Petition, and fails to adhere to the Rules of Evidence.  *See* Pet. Decl. at ¶¶ 10-13.

The Petition and accompanying declaration neither show that ECMC has failed to comply with the CID nor that it has refused to comply.  First, among other things, ECMC was still continuing to produce emails and other responsive documents at the time that the Petition was filed.  *See* Exhibits G, I to Cass Decl.  The Bureau incorrectly suggests that ECMC's February 19 email claimed that ECMC's production was "final" and that, for this reason, the Bureau had a basis to conclude that ECMC had failed to comply.  Pet. 6.  But as noted above, the declaration misrepresents the February 19 email that it fails to attach; that email does not include the word "final," nor does it state that ECMC has completed its document production.  *See* Exhibit F to Cass Decl.

Second, even if the email did state that ECMC's production was final, such a statement would still not substantiate the contention that ECMC "improperly withheld" responsive documents, an assertion that implies that ECMC possessed the information and then engaged in a deliberate or willful act in not producing it.

### C.    Bureau Failed to Comply With Its Meet-and-Confer Obligations.

The Bureau filed its Petition to Enforce without having first conferred with ECMC regarding the alleged production deficiencies.  In failing to meet and confer or provide any notice prior to filing the Petition, the Bureau denied ECMC the opportunity to address the Bureau's misapprehensions prior to the Bureau's revealing the existence of a non-public law enforcement investigation.  The Bureau did so in contravention of both the CFPB's

13

rules and procedures, as well as the requirements imposed on civil litigants seeking to bring a motion to compel and the Court's local rules.

Rule 37 of the Federal Rules of Civil Procedure requires a party to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Moreover, Local Rule 7.1 requires that, "[b]efore filing a motion other than a motion for temporary restraining order or a motion under Fed. R. Civ. P. 56, the moving party must, if possible, meet and confer with the opposing party in a good-faith effort to resolve the issues raised by the motion."

The Bureau did not make any such efforts here. Local Rule 7.1 further allows a party to supplement its motion with a meet-and-confer statement if the opposing party is "unavailable to meet and confer before the moving party files its motion." D. Minn. LR 7.1(a)(1)(A). The Bureau has not done so.

This Court frequently denies motions when the moving party fails to adhere to these requirements. *See, e.g.*, *Laughlin v. Stuart*, Case No. 19-cv-2547 (ECT/TNL), 2021 WL 1589546, at *3 (D. Minn. Apr. 22, 2021) (denying motions where movant did not meet and confer and explaining that "the meet-and-confer requirement 'is only fulfilled when parties have engaged in a genuine and good-faith discussion about each discovery request that is in dispute'") (citation omitted). And, as this Court has noted, "the meet and confer requirement stated in Local Rule 7.1(a) is not a meaningless procedural hurdle attorneys should simply check off their list before filing a motion . . . [G]ood faith communications with opposing counsel can reduce or eliminate unnecessary motions practice."

14

*MasterMine Software, Inc. v. Microsoft Corp.*, Case No. 13-cv-971 (PJS/TNL), 2017 WL 12600147, at *7 (D. Minn. Nov. 10, 2014) (citing *Icenhower v. Total Automotive, Inc.*, No. 14-cv-1499 (ADM/TNL), 2014 WL 4055784, at *2 (D. Minn. Aug. 15, 2014).

Here, not only did the Bureau fail to meet and confer with ECMC, but it declined to discuss the Petition with ECMC's counsel when requested.  See Cass Decl. ¶ 13.  And, in this instance, the stakes are higher than "eliminat[ing] unnecessary motions practice;" rather, the Bureau could have avoided the unnecessary and premature outing of an ongoing, non-public law enforcement investigation.

### D.   The Bureau Improperly Disclosed A Non-Public Investigation For No Legitimate Reason And In Contravention Of Its Own Rules

"Bureau investigations generally are non-public."  12 C.F.R. § 1080.14(b).  In fact, the Bureau can only "disclose the existence of an investigation to potential witnesses or third parties *to the extent necessary* to advance the investigation."  *Id*. (emphasis added). In this instance, the Bureau did not just disclose the investigation to a potential witness; rather it filed a document disclosing the details of the investigation in a public forum.

The Bureau's deliberate disclosure of this non-public investigation has not furthered its investigation.  But the Bureau's knowing disclosure of an ongoing and non-public investigation has caused "substantial and unfair injury," to ECMC.  *John Doe Company No. 1 v. CFPB*, 195 F. Supp. 3d 9, 19, 23 (D.D.C. 2016).  The mere fact of this disclosure has unfairly impacted ECMC and its reputation.  Courts have recognized the existence of an "extraordinarily strong privacy interest" in maintaining the confidentiality of the identities of subjects of ongoing and non-public investigations.  *In re Sealed Case*, 237

F.3d 567, 668 (D.C. Cir. 2001). Courts interpreting these confidentiality provisions also have repeatedly held that there are serious consequences to companies when the Bureau discloses a non-public investigation. *See John Doe Company No. 1*, 195 F. Supp. 3d at 19-20.

Indeed, the D.C. Circuit analogized "the strong confidentiality interest" found here to that which is "protected by Federal Rule of Criminal Procedure 6(e)(6)." *In re Sealed Case*, 237 F.3d at 666 (internal quotations omitted). "[S]ecrecy is vital to protect an innocent who is exonerated from disclosure of the fact that he has been under investigation." *Id.* (quoting *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 n.6 (1958)).

That the Bureau failed to meet and confer with ECMC or alert ECMC to the allegations in its Petition, and then refused to withdraw the Petition, demonstrates the Bureau's disregard for ECMC's "strong confidentiality interest" here. *In re Sealed Case*, 237 F.3d at 666. "[I]t is not difficult to see how disclosure of the fact that an entity is subject to investigation by federal authorities would inflict non-trivial reputational, and possibly associated financial harm on that entity." *John Doe Company No. 1 v. Consumer Fin. Prot. Bureau*, Civil Action No. 15-1177, 2015 WL 6317031, at *8 (D.D.C. Oct. 16, 2015). The Petition not only discloses the fact of the investigation, it makes unsubstantiated allegations about ECMC's alleged conduct relating to the underlying, but still inchoate investigation.

**E.    The Petition Improperly And Unfairly Implies That ECMC Has Violated Laws, Even Though The Bureau Admits That Its Investigation Is Ongoing**

It seems that the CFPB has already made up its mind about this investigation and presumed ECMC liable for violations.  *See, e.g.,* Pet. at 8-10.  Such a pre-determination, especially one that is so publicly announced, undermines principles of due process and fairness that guide any law enforcement investigation.  The Bureau is no exception.

The Petition also enunciates a legal theory around the Bureau's investigation into "industry practices impacting whether defaulted student borrowers incur collection costs." *See* Pet. at 3.  Such an investigation would constitute an overreach by the CFPB into tightly regulated practices governed by the HEA and ED's implementing regulations, as discussed above.  The Bureau's apparent theory of liability ignores the fact that guaranty agency industry practices accord with these regulations, regulatory expectations, and decades of standard industry practice well-known to ED.  *See, e.g.*, 20 U.S.C. § 1091a(b)(1) (defaulted borrowers "*shall be required to pay . . . reasonable collection costs*. …") (emphasis added); 34 C.F.R. § 682.410.  In addition to constituting regulatory overreach, the proffered legal theory also would undermine a "presumption against statutory retroactivity [which] is founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation." *Landgraf v. USI Film Products, et al.* 511 U.S. 244, 286 (1994).

The Petition has no legal or factual basis, and purports to be in furtherance of an investigation that is without merit.  The Bureau has, in turn, disclosed the fact of a non-

17

public investigation in contravention of well-established rules and case law, unfairly prejudicing and damaging ECMC.  *See* 12 C.F.R. § 1080.14.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, ECMC respectfully requests that the Court deny the Bureau's Petition to Enforce CIDs.  ECMC further requests that the Court consider ordering whatever further relief it deems is just, including costs and fees.

Date:  July 27, 2021

**FOX ROTHSCHILD LLP**

By: /s/  Aaron Mills Scott
    Aaron Mills Scott (#33943X)

Two22 Building, Suite 2000
222 South Ninth Street
Minneapolis, Minnesota 55402
Telephone:     612-607-7000
Facsimile:      612-607-7100
Email:  ascott@foxrothschild.com

Allyson B. Baker, *pro hac vice pending*
Erin Zacuto Cass, *pro hac vice pending*
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Phone:  (202) 344-4000
abbaker@venable.com

**ATTORNEYS FOR RESPONDENT
EDUCATIONAL CREDIT MANAGEMENT
CORPORATION**